Geeen, J.
delivered the opinion of the court.
In the passage of the act of 1784, ch. 22, the Legislature manifestly intended, first, that those nearest in blood to the intestate, should inherit his estate in preference to those more remote; second, that the blood of the father should inherit preferably to that of the mother; and third, that the line from whence the estate descended, should inherit it.
They intended to favor the paternal line, in casting upon it the inheritance, where the estate was acquired by purchase, in preference to the maternal line; but in cases where the estate descended upon the intestate, from his mother, and there be no children, or brothers and sisters of the whole blood, then thé paternal line, so far from being favored, is excluded altogether, and the estate is cast upon the relations of the mother.
With this view, let us consider what is the meaning of the act of 1784, ch. 10, sec. 3. This section recites, that “whereas, by the seventh section of the said act, (1784j ch.. 22,) real estate actually purchased or otherwise acquired, by any intestate, are to descend to the father, if living, but if dead, then to the mother of such intestate and her heirs, by which the descent may be altered by the accident of death, and the paternal line, which is favored in all other instances, may be deprived of the inheritance by such accident: for remedy whereof,” &c. *322 Now this recital is inconsistent with the construction that the words otherwise acquired, are intended to include estates descended from either parent. We have seen that it was the policy of the act of 1784, ch. 22, that the mother’s estate' should go to her relations, and that in such case, the paternal line was not only not preferred, but it is absolutely excluded from the inheritance. How could the Legislature then say, (if otherwise acquired, meant estates descended from either of the parents) that the paternal line was favored in . all other instances except the one enumerated, when the fact was, that the paternal line was only favored in instances where the estate was acquired otherwise than by descent from the parents? The language used in this recital, indicates strongly to my mind, that they intended to use the words otherwise acquired, in a limited sense, and not as embracing acquisitions by descent from the parents.
Again: this third section provides that the estate shall vest “in the father of such intestate if living, but if dead, then in the mother for life, and after the death of the mother, then in the heirs of such intestate on the part of the father,” &c. If the words “otherwise acquired,” be taken to mean lands descended from the parents, then if the mother be dead and the father living, the lands descended from the mother would vest in the father and descend to his heirs; thereby taking the mother’s estate from her family, and casting it upon the family of the father exclusively. This would be directly contrary to the provision of the third and fourth sections of 1784, ch. 22, and would be so repugnant to the feelings of society, that it would not be tolerated.
The truth is, the Legislature have not attempted to use technical language in either 1784, ch. 22, sec. 7, or 1784, ch. 10, sec. 3. Technically, estates are only acquired by purchase, and by descent. But here, they used the words, actually purchased, as contradistin-guished from the extended technical sense of the word *323 purchase. They mean, acquired by actual payment of consideration for the lands; thus leaving the words, otherwise acquired, ample operation, without involving these acts in the absurdities and contradictions which would result from a contrary construction. I therefore think that lands descended from either parent, are not within the provisions of the sections under consideration. In this opinion I am fortified by the uniform adjudications of the courts of North Carolina. 2 Taylor’s Rep. 406: i Mur. 493: see also the able argument of judge Haywood, in 2 Hay. 246.
We are therefore for affirming the judgment.
Judgment affirmed.